UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHRISTOPHER PAUL HAMM, *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 4:09-CV-01268 |
| CHEVRON, et al., *Defendants*. | § § | |

**ORDER**

This wrongful discharge, age discrimination, and retaliation suit is before the court on defendant Chevron U.S.A., Inc.'s motion for summary judgment.[1] A hearing on the motion was held on October 22, 2010. The motion is granted.

**Background**[2]

Plaintiff Christopher Paul Hamm began his employment with Chevron in July 2002.[3] Four years later in August 2006, Hamm (then 46 years old[4]) accepted a position as a Construction Representative in the Facilities Engineering (F.E.) Group.[5] As Construction Representative, Hamm was responsible for the

---

[1]Dkt. 20, 21. Chevron U.S.A., Inc. is hereafter referred to as "Chevron."

[2]The court will draw, as it must, all inferences arising from the facts in the light most favorable to the nonmoving party. *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 817 (5th Cir.2002). For ease of citation, excerpts from plaintiff's deposition found in Dkt. 20-1, at 107-135 and Dkt. 21-1 will hereinafter be referred to as "Hamm's Deposition."

[3]Hamm's Deposition, p. 14, ln. 19 - p. 15, ln. 6.

[4]*Id.*, p. 107, ln. 21-24.

[5]Dkt. 20-1 (Def. App. 0001, ¶ 5).

construction of Chevron's upstream infrastructure in South Texas,[6] working with a team of engineers in Chevron's F.E. Group.[7] Hamm was also responsible for managing work performed by third-party contractors.[8] Hamm's direct supervisor was Allen Hein, who in turn reported to Tracy Murrel.[9]

Hamm experienced problems with two F.E. Group engineers—Gloria Sanchez and Adam Mikulcik—both of whom were in their twenties.[10] Specifically, when Hamm directed "common-sense adjustment[s] out in the field" to make nozzles and piping fit,[11] Sanchez and Mikulcik reported to Murrel that Hamm was making "design changes."[12] Hamm saw these changes as minor and necessary for the operation of the construction,[13] and that the engineers lacked the experience

[6]Hamm's Deposition, p. 61, ln. 4-13.

[7]*Id.*, p. 36, ln. 3-4; p. 47, ln. 21-23.

[8]Dkt. 20-1 (Def. App. 0002, ¶ 9).

[9]*Id.* (Def. App. 0022-0023). Murrel is one year older than Hamm. *See* Dkt. 21, at 13 n.1; Hamm's Deposition, p. 14, ln. 19 - p. 15, ln. 6.

[10]Hamm's Deposition, p. 39, ln. 18 - p. 40, ln. 7; Dkt. 20-1 (Def. App. 0055).

[11]Hamm's Deposition, p. 37, ln. 11-13; p. 38, ln. 11-18; p. 39, ln. 3-6.

[12]Hamm's Deposition, p. 37, ln. 15-20; p. 38, ln. 17-19; p. 39, ln. 6-8.

[13]*Id.*; Dkt. 20-1 (Def. App. 0049-0050).

to know when a change was substantial enough to be called a "design change."[14] In response to these reports, Murrel noted these incidents as reflecting Hamm's inability to follow instructions.[15] Hamm avers that Murrel's actions exhibit his favoritism towards the younger engineers.[16]

In the fall of 2007, Hamm also began working with employees for one of Chevron's primary contractors, Grand Island Shipyard (GIS), to install gas separation units in South Texas.[17] During that time, Chevron's contract provided that Chevron would pay GIS a fixed amount for GIS employees' *per diem* and hotel expenses.[18] Jeffrey DeRosia was the GIS employee responsible for distributing these payments.[19] GIS employees complained to Hamm that DeRosia was "stealing

---

[14]Hamm's Deposition, p. 38, ln. 5-10. Murrel also took note of the younger engineers' lack of experience, calling them "children engineers." *Id.*, p. 37, ln. 6-11.

[15]Dkt. 20-1 (Def. App. 0044).

[16]Dkt. 22, at 4. Plaintiff's response to Chevron's motion for summary judgment also alleges that Murrel held Hamm to "disparate standards of professional conduct" and took "disciplinary action against [Hamm] while declining to reprimand younger employees for similar behavior," citing Hamm's Deposition, pp. 37-48. However there is nothing in that deposition excerpt to support this allegation. Rather, the excerpt describes the "design change" disagreement, general discord between Hamm and Sanchez, and how Sanchez was held accountable for going over-budget on a project.

[17]Dkt. 20-1 (Def. App. 0030); Hamm's Deposition, p. 46, ln. 15-19.

[18]Dkt. 20-1 (Def. App. 0002, ¶ 9).

[19]*Id.*

money" from them by overcharging them for their hotel.[20] Hamm reported this to Murrel as an alleged theft.[21] Murrel investigated the claim and confirmed that GIS—not Chevron—was responsible for allocating *per diem* payments.[22] Murrel told Hamm of his findings, but Hamm was unconvinced, and complained again to Murrel and Hein.[23] Murrel finally told Hamm to stop complaining about the matter.[24]

In December 2007, still while still working with GIS, Murrel instructed all construction representatives to ensure that Job Safety Analysis (JSA) meetings were held every day in the field before starting work.[25] Shortly thereafter Hamm obtained permission to conduct *pre-JSA* meetings in the hotel lobby.[26] Murrel soon learned from a GIS employee that Hamm was holding the entire JSA meeting in the lobby.[27] When confronted by Murrel about this, Hamm believed DeRosia reported

---

[20]Hamm's Deposition, p. 56, ln. 4-9, 16-23.

[21]Dkt. 20-1 (Def. App. 0002, ¶ 9); Hamm's Deposition, p. 56, ln. 11-13.

[22]Dkt. 20-1 (Def. App. 0002, ¶ 9)

[23]*Id.*

[24]Hamm's Deposition, p. 90, ln. 15 - p. 91, ln. 1.

[25]Dkt. 20-1 (Def. App. 0002, ¶ 11).

[26]*Id.* (Def. App. 0003, ¶ 12).

[27]Dkt. 20-1 (Def. App. 0003, ¶ 12). Hamm alleges that Murrel gave permission to conduct the JSA meeting in the hotel lobby, and perform a "walk around" on the job site.

his noncompliance and sought to have DeRosia removed from the GIS crew.[28] In January 2008 at his annual evaluation, Hamm agreed not to take action against DeRosia.[29] However two days later, he attempted to obtain Hein's help to "run Jeffrey DeRosia off the GIS crew."[30]

Hamm's difficulties with GIS extended beyond his conflict with DeRosia. Specifically, the day after his January 2008 evaluation, Murrel received a letter from Tom Wright, GIS's Texas division manager.[31] The letter complained of Hamm's behavior, specifically noting that (1) Hamm offered GIS employees Chevron baseball caps if they would obtain copies of GIS's hotel receipts; (2) Hamm engaged in profanity-ridden shouting matches with a specific GIS field crew member; and (3) Hamm overrode GIS's staff rotational schedule with regard to a crew member recommended by Hamm.[32] The letter also questioned Hamm's dedication to achieving a safe and productive work-site and complained of his

---

Dkt. 20-1 (Def. App. 0047). Moreover, Hamm asserts that DeRosia called Murrel to "get [him] into big trouble" because DeRosia did not know Hamm had permission to conduct the JSA meetings in the hotel lobby. *Id.*

[28]*Id.* (Def. App. 0003, ¶ 15; 0043). Hamm later denied he went after DeRosia. *Id.* (Def. App. 0047).

[29]*Id.* (Def. App. 0003, ¶ 15; 0043).

[30]*Id.*(Def. App. 0026).

[31]Dkt. 20-1 (Def. App. 0027-0028).

[32]*Id.*

damper on morale.[33]

Murrel suspended Hamm for one-week (February 11-17, 2008) without pay.[34] On February 18, Murrel met with Hamm to discuss performance issues, which was documented in a Record of Discussion.[35] Murrel transferred Hamm to Chevron's Health, Environment and Safety Department, giving him three months to improve his performance.[36] Since the reassignment was a desk-job, Hamm was instructed to return his "company truck, telephone, procurement card and all other assigned tools."[37] On March 4, 2008, Hamm sent a letter rebutting the Record of Discussion.[38] There, Hamm denied many of the factual allegations made against him, and for the first time asserted protection under Title VII, the ADEA and *Sabine Pilot*.[39]

On March 8, 2008, Hamm began three weeks of accrued vacation.[40] On

---

[33]*Id.*

[34]Dkt. 20-1 (Def. App. 0033).

[35]*Id.* (Def. App. 0041-0042).

[36]*Id.*

[37]*Id.* (Def. App. 0042).

[38]*Id.* (Def. App. 0046-0055).

[39]*Id. See* 42 U.S.C. § 2000e, *et seq.*; 29 U.S.C. § 621, *et seq.*; *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733 (Tex. 1985).

[40]Dkt. 20-1 (Def. App. 0060).

March 28, Hamm gave his two-weeks notice.[41] Shortly thereafter he started to work for Spectra Energy.[42]

On May 22, 2008, Hamm filed a Charge of Discrimination with the Equal Employment Opportunity Commission.[43] On January 28, 2009, the EEOC issued Hamm a right-to-sue letter.[44] Hamm filed this suit on April 27, 2009.[45] His amended complaint asserts causes of action for (1) wrongful discharge for refusal to perform an illegal act, (2) age discrimination under the Age Discrimination in Employment Act (ADEA),[46] and (3) retaliation under Title VII of the Civil Rights Act of 1964.[47] On September 1, 2010, Chevron filed its motion for summary judgment.[48] Hamm responded on September 22.[49]

---

[41] *Id.* (Def. App. 0061-0062).

[42] *Id.* (Def. App. 0071).

[43] *Id.* (Def. App. 0064-0068).

[44] *Id.* (Def. App. 0069).

[45] Dkt. 1.

[46] 29 U.S.C. § 621, *et seq.*

[47] 42 U.S.C. § 2000e, *et seq.*

[48] Dkt. 20, 21.

[49] Dkt. 22.

## Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" and therefore judgment is appropriate as a matter of law. FED. R. CIV. P. 56(c). The movant has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). A dispute is "genuine" if the evidence could lead a reasonable jury to find for the non-movant. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002). The court may consider "pleadings, affidavits, depositions, motions, answers to interrogatories, stipulations and any other material properly before it." *Munoz v. Int'l Alliance of Theatrical Stage Emps. & Movie Picture Machine Operators of the United States and Canada*, 563 F.2d 205, 207 n.1 (5th Cir. 1977).

## Analysis

For the reasons explained below, Chevron is entitled to summary judgment on all claims asserted.

### 1. Wrongful Discharge For Refusal to Perform an Illegal Act

Hamm's complaint includes a wrongful discharge claim for refusal to

perform an illegal act.[50] Specifically, Hamm alleges that DeRosia overcharged GIS employees for their hotel expenses.[51] After repeatedly reporting this alleged theft, Murrel ordered him to cease.[52] Hamm's complaint alleges he was constructively terminated for refusing to violate, or enter into a conspiracy to violate, Texas Penal Code § 31.03.

Hamm filed no response to Chevron's summary judgment motion on this claim, and his counsel confirmed at the hearing that he has abandoned this claim. Accordingly, Chevron is entitled to summary judgment dismissing the *Sabine Pilot* claim.

**2. Age Discrimination**

Hamm's complaint also asserts a claim of age discrimination under the ADEA. Hamm specifically alleges that Murrel favored Sanchez and Mikulcik's word over his, and took disciplinary action against him based on these complaints.[53] In addition, Hamm asserts that his suspension, reassignment and deprivation of

---

[50]Dkt. 8. Preliminarily, it should be noted that Hamm's response to Chevron's motion for summary judgment did not contain any argument regarding this claim. Thus, the court infers Hamm's claim from his amended complaint and the summary judgment evidence before it.

[51]Hamm's Deposition, p. 56, ln. 4-9, 16-23.

[52]Hamm's Deposition, p. 90, ln. 15 - p. 91, ln. 1.

[53]Dkt. 22.

benefits were also the result of age discrimination.[54]

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

Assuming *arguendo* Hamm proved his prima facie case, Chevron produced sufficient evidence to satisfy its burden of showing a legitimate nondiscriminatory reason for the alleged adverse employment actions. In Hamm's Record of Discussion, Murrel noted that Hamm's "design changes" exhibited an inability to follow instructions.[55] The evidence also shows Hamm continued this subordination in insisting after being told otherwise that Chevron was responsible for allocating GIS's *per diem* payments.[56] Hamm continued this trend in failing to follow Murrel's instructions regarding the JSA meetings.[57] Finally, the letter from GIS's Texas division manager complained of Hamm's behavior and its effect on GIS employees.[58] This evidence shows that Chevron disciplined Hamm in response to his various behavioral problems—a legitimate nondiscriminatory reason.

---

[54]*Id.*

[55]Dkt. 20-1 (Def. App. 0044).

[56]*Id.* (Def. App. 0002, ¶ 9)

[57]*Id.* (Def. App. 0003, ¶ 15; 0043).

[58]*Id.* (Def. App. 0027-0028).

Since Chevron has met its burden of production, Hamm must show that Chevron's reasons are pretextual. This is where Hamm fails.[59] There is no evidence in the record that raises a genuine issue of material fact that any of the reasons asserted were pretext for age-based animus. The fact that Hamm, an employee over 40, was disciplined in response to complaints of engineers in their twenties is coincidental at best.[60] Besides this fortuity, the record is devoid of any evidence indicating Hamm's age was considered in any of Murrel's decisions made the basis of this suit. Since Hamm has failed to raise a genuine issue of material fact that Chevron's legitimate nondiscriminatory reasons were pretextual, Chevron is entitled to summary judgment on Hamm's age discrimination claim.

**3. Retaliation**

Hamm also asserts a claim for retaliation under Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e, *et seq*. Specifically, Hamm asserts that Murrel lied on Hamm's evaluation (the Record of Discussion), suspended him, reassigned

[59]Hamm's response to Chevron's motion for summary judgment argues that the motion should be denied solely because Hamm can prove his prima facie case under the *McDonnell Douglas* framework. This argument clearly misstates the law. *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922–29 (5th Cir. 2010) (discussing the plaintiff's pretext evidence).

[60]Contrary to Hamm's argument, the record indicates Murrel was less likely to credit the engineers' opinions because of their inexperience. *See* Hamm's Deposition, p. 37, ln. 6-11 (Murrel referred to the young engineers as "children engineers" because of their inexperience).

him, and deprived him of certain benefits, all in response to Hamm's report of unlawful discrimination.[61]

"To establish a retaliation claim under Title VII, a plaintiff must prove that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action." *Smith v. Xerox Corp.*, 371 Fed. Appx. 514, 515 (5th Cir. 2010) (unpublished opinion) (citing *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 414 (5th Cir. 2003)).

Hamm's claim does not meet the last element. Hamm first alleged unlawful discrimination on March 4, 2008,[62] whereas the employment actions complained of occurred one month before on February 11 and 18.[63] Since Hamm had not yet reported discrimination until after the complained employment actions, Hamm's retaliation fails as a matter of law, and Chevron is entitled to summary judgment on this claim.

## Conclusion and Order

For the foregoing reasons, defendant's motion for summary judgment is granted in full. The court will issue a separate final judgment.

---

[61]Dkt. 22.

[62]Dkt. 20-1 (Def. App. 0046-0055).

[63]*Id.* (Def. App. 0033; 0041-0042).

Signed at Houston, Texas on October 29, 2010.

Stephen Wm Smith
United States Magistrate Judge